**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Nina Y. Wang**

Civil Action No. 22-cv-02192-NYW

V.V.L.,[1]

     Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration,

     Defendant.

---

**MEMORANDUM OPINION AND ORDER**

---

This civil action arises under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401–33, 1381–83f, for review of the final decision made by the Commissioner of the Social Security Administration ("Commissioner" or "Defendant") denying the applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") filed by V.V.L. ("Plaintiff"). After carefully considering the Parties' briefing, the Administrative Record, and the applicable case law, this Court respectfully **REVERSES** and **REMANDS** the Commissioner's decision.

**BACKGROUND**

Plaintiff, born October 7, 1974, filed an application for DIB February 25, 2020, and an application for SSI on March 3, 2020,[2] alleging she became disabled on March 1, 2015. [Doc. 8-

---

[1] The Local Rules for this District provide that "[a]n order resolving a social security appeal on the merits shall identify the plaintiff by initials only." D.C.COLO.LAPR 5.2(b).

[2] The Hearing Decision indicates that Plaintiff protectively filed her application for SSI on February 25, 2020. [Doc. 8-2 at 12].

5 at 316, 319, 321].[3]  Plaintiff claims she could not work due to the following medical conditions: degenerative disc disease, osteoarthritis, bulging discs and bone spurs, spinal stenosis, fibromyalgia/chronic fatigue, anxiety/depression, post-traumatic stress disorder, and attention deficit disorder. [Doc. 8-3 at 69].  The Social Security Administration (the "SSA") initially denied Plaintiff's claim on September 4, 2020.  [*Id.* at 86–87, 106].  Upon reconsideration, the SSA again denied Plaintiff's claim on May 11, 2021.  [*Id.* at 139–40, 171–72].  Plaintiff requested a hearing before an administrative law judge ("ALJ") on or about May 25, 2021.  [Doc. 8-4 at 218].[4]  ALJ Matthew Kawalek presided over the hearing telephonically on November 16, 2021, during which the ALJ heard testimony from Plaintiff and Vocational Expert ("VE") Robert Van Iderstine.  [Doc. 8-2 at 12].

## I.      The ALJ Hearing

At the hearing, Plaintiff testified that she last worked as a home health aide/caregiver, helping her mother with her daily living activities.  [*Id.* at 40–41].  Plaintiff testified that she was unable to work and had difficulty standing, walking, dressing herself, and showering regularly due to pain in her back and lower extremities.  [*Id.* at 42–45, 48].  Plaintiff also stated that her five grandchildren live with her, but her husband and older children did "everything" for the grandchildren, including laundry, transporting them to and from school, homework, cleaning, and various appointments.  [*Id.* at 45–46, 53].  In addition, Plaintiff testified that she suffered from anxiety and depression, which made her to feel "lonely no matter how many people [she] had

---

[3] When citing to the Administrative Record, the Court utilizes the docket number assigned by the Case Management/Electronic Case Filing ("CM/ECF") system and the page number associated with the Administrative Record, found in the bottom right-hand corner of the page.  For all other documents, the Court cites to the document and page number generated by the CM/ECF system.

[4] The record reflects that Plaintiff requested the hearing on May 24 or May 25, 2021.  *See* [Doc. 8-4 at 218].

around" and caused her to withdraw from others and made it difficult to leave her home.  [*Id.* at 46–47].  Plaintiff testified that she could lift "[m]aybe five pounds" because of carpal tunnel and "pain or numbness and tingling in [her] hands."  [*Id.* at 50].  She testified that she spent most of her time lying down because it was "one of the only ways" to alleviate her pain, and she had challenges bending over.  [*Id.* at 50–51].  Plaintiff also testified that she had not driven in the previous four years; she only cooked if she was not required to stand or if the task did not take "too long," but she still required a chaperone because "I just never know sometimes if I'm going to have to go sit down and take a break."  [*Id.* at 52].  In addition, Plaintiff testified that although she took a road trip to Las Vegas, Nevada in October 2020, she had challenges walking "long distances, even with a walker" during the trip; she spent most of the trip in a wheelchair; and the trip overall "[t]ook so much longer than it should have being [sic] on the road, having to stop for [her] to try to stretch or reduce [her] pain or try to change seats," or to use the restroom.  [*Id.* at 47–48].  Similarly, approximately nine months before her Las Vegas trip, Plaintiff took a trip to Cripple Creek, Colorado, where she was able to use a slot machine.  [*Id.* at 53–54].

Following Plaintiff's testimony, the VE summarized Plaintiff's work history and identified Plaintiff's past relevant work as a home health aide.  [*Id.* at 57].  The VE also answered three hypotheticals from the ALJ regarding types of work individuals similarly situated to Plaintiff could perform.  *See* [*id.* at 57–62].  For the first hypothetical, the ALJ asked the VE to consider a person of Plaintiff's age, education, and past work experience who can occasionally lift and carry up to 10 pounds and frequently lift and carry fewer than 10 pounds; stand and/or walk up to two hours in an eight-hour workday; use a cane for ambulation; sit for up to eight hours; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, crawl, or climb ramps and stairs; tolerate no more than frequent exposure to extreme cold, wetness, or vibration; no exposure to

hazards, including unprotected heights or operating heavy machinery; limited to understanding, remembering, carrying out, or maintaining attention and concentration on no more than simple tasks and instructions (i.e., job duties that can be learned in up to 30 days); and sustaining only ordinary routines and making no more than simple work-related decisions.  [*Id.* at 57–58].  The VE stated that such a person could not perform any of Plaintiff's past work, but identified three sedentary jobs[5] in the national economy that such a person could perform: (1) telephone information clerk, with 150,000 positions available nationally and 1,200 in Colorado; (2) addresser/addressing clerk, with 37,000 positions available nationally and 495 in Colorado; and (3) final assembler, with 60,000 positions available nationally and 850 in Colorado.  [*Id.* at 58–59, 63].

For the second hypothetical, the ALJ referred to the first hypothetical individual and changed only one limitation: such an individual could stand and/or walk for one hour in an eight-hour workday.  [*Id.* at 59].  The VE testified that such a person could still perform the three jobs he identified in response to the ALJ's first hypothetical as "they're primarily performed from a sedentary seated position."  [*Id.*].  For the third hypothetical, the ALJ added that "this third individual would be limited to sitting for no more than six hours of an eight-hour workday."  [*Id.*].  In response, the VE testified that this additional limitation "would eliminate full-time employment."  [*Id.* at 59–60].

---

[5] The Social Security regulations define "Sedentary work" as work that

> involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a), 416.967(a).

The VE also testified that generally, for sedentary, unskilled work, missing more than one day of work per month would eliminate all such full-time work; it would be unacceptable for the individual "require[d] the ability to change positions at will between sitting, standing, or walking"; and all full-time work would be eliminated if such individual were limited to reaching, handling, and fingering no more than 10 percent of the workday, or if such individual were expected to be off-task more than five percent of the workday.  [*Id.* at 60–61].  In addition, the VE stated that insofar as his testimony was inconsistent with the Dictionary of Occupational Titles and Selected Characteristics of Occupations, such testimony was based on his experience as a vocational rehabilitation counselor for more than four decades.  [*Id.* at 61–63].

## II.    The Hearing Decision

On December 8, 2021, the ALJ issued a decision denying Plaintiff's claim.  [*Id.* at 12–26].  First, the ALJ determined that Plaintiff met the insured status requirements of the Act through September 30, 2020, and had not engaged in substantial gainful employment since March 1, 2015, the alleged onset date.  [*Id.* at 14].  At Step Two, the ALJ found that Plaintiff had the following severe impairments:

> degenerative disc disease, stenosis, and an annular disc tear of the lumbar spine; osteoarthritis of the bilateral knees; arthritis of the bilateral hips; inflammatory polyarthritis; morbid obesity; a depressive, bipolar, or related disorder (variably called unspecified depressive disorder, depression, major depressive disorder, or dysthymic disorder); an anxiety disorder (variably called anxiety state, generalized anxiety disorder, or anxiety); a learning disorder (variably called attention deficit hyperactivity disorder ("ADHD") or attention deficit disorder); unspecified trauma- and stressor-related disorder/posttraumatic stress disorder ("PTSD"); and opioid dependence.

[*Id.* at 14–15 (citations omitted)].  The ALJ also noted, *inter alia*, that Plaintiff had "also been diagnosed with amphetamine use disorder, benign essential hypertension, vitamin D deficiency, dyslipidemia, combined hyperlipidemia, hearing loss, type II diabetes mellitus, and hypothyroidism."  [*Id.* at 15].  However, the ALJ found those impairments to be non-severe on the

grounds that there was "no evidence that [Plaintiff] ha[d] ongoing functional limitations from these impairments due to the limited nature of the complaints, the good response to treatment, or the lack of any evidence of any functional limitations for any 12-month period of time."   [*Id.*]. Similarly, the ALJ noted Plaintiff was "diagnosed" with other pain-based symptoms, but such symptoms were not, "on their own, medically determinable impairments."   [*Id.*].   The ALJ further noted that Plaintiff had been diagnosed with fibromyalgia, but found that it was "not a medically determinable impairment" because there was no evidence that Plaintiff's symptoms satisfied the criteria for establishing fibromyalgia under the SSA's established procedures—namely, "the 1990 American College of Rheumatology ('ACR') Criteria (which requires the tender points examination) or the 2010 ACR Preliminary Diagnostic Criteria (which requires complaints of widespread pain as well as six associated symptoms)."   [*Id.* at 15–16].   Nevertheless, the ALJ stated that he considered any potential effects from these impairments or symptoms in his assessment of Plaintiff's residual functional capacity.   *See* [*id.*].

At Step Three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or equals the severity of one of the listed impairments under the Social Security regulations ("Regulations").   [*Id.* at 16–18].[6]   At Step Four, the ALJ concluded that Plaintiff has the residual functional capacity to perform a reduced range of sedentary work, as follows:

> [T]he claimant can occasionally lift/carry 10 pounds and frequently lift/carry less than 10 pounds.  She can stand and/or walk one hour and sit for up to eight hours of an eight-hour workday, and she requires a cane for ambulation.  The claimant can never climb ladders, ropes, or scaffolds, and she can occasionally balance, stoop, kneel, crouch, crawl, or climb ramps and stairs.  She can tolerate no more

---

[6] The ALJ stated that he considered Plaintiff's impairments under "listings 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root), 1.16 (lumbar spinal stenosis resulting in compromise of the cauda equina), 1.18 (abnormality of a major joint in any extremity), and SSRs 13-2p and 19-2p."   [Doc. 8-2 at 16].

than frequent exposure to extreme cold, wetness, or vibration, and she can have no exposure to hazards, including unprotected heights or operating heavy machinery. Mentally, she is limited to understanding, remembering, carrying out, and maintaining attention and concentration on no more than simple tasks and instructions, defined specifically as those job duties that can be learned in up to 30 days' time. She can sustain only ordinary routines and make no more than simple, work-related decisions.

[*Id.* at 18]. The ALJ also found that Plaintiff "remains able to perform her activities of daily living without significant difficulty, leisurely travel, and attend appointments independently." [*Id.* at 20].

At Step Four, the ALJ determined that Plaintiff was incapable of performing any of her past relevant work, [*id.* at 24], and at Step Five, the ALJ found "there are jobs that exist in significant numbers in the national economy" that Plaintiff could perform—namely, (1) telephone information clerk (15,000 jobs nationwide), (2) addressing clerk (37,000 jobs nationwide), and (3) final assembler (60,000 jobs nationwide). [*Id.* at 25]. As a result, the ALJ determined that Plaintiff was not disabled. [*Id.* at 26].

Plaintiff sought review of the Hearing Decision on January 28, 2022, [Doc. 8-4 at 312–15], and the Appeals Council denied Plaintiff's request on June 28, 2022. [Doc. 8-2 at 1–3]. Plaintiff sought judicial review of the Commissioner's final decision in the United States District Court for the District of Colorado on August 26, 2022, invoking this Court's jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). *See* [Doc. 1].[7] Because this matter is ripe for consideration, the Court considers the Parties' arguments below.

## LEGAL STANDARD

An individual is eligible for DIB under the Act if they are insured, have not attained retirement age, have filed an application for DIB, and have a disability as defined in the Act. *See* 42 U.S.C. § 423(a)(1). Similarly, SSI is available to an individual who is financially eligible, files

---

[7] This case was reassigned to Judge Nina Y. Wang on March 17, 2023. *See* [Doc. 21].

an application for SSI, and is disabled as defined in the Act.  *See id.* § 1382.  For DIB, the claimant must prove they were disabled prior to last date insured.  *See Flaherty v. Astrue*, 515 F.3d 1067, 1069 (10th Cir. 2007).  On the other hand, the earliest a claimant can receive SSI is the month following the month within which the claimant filed her application, and thus the claimant must establish that she was disabled on or prior to her application date.  *See* 20 C.F.R. §§ 416.200, 416.335; *see also id.* §§ 404.1512, 416.912(b)(1) (stating that the SSA "will develop [the claimant's] complete medical history for at least the 12 months preceding the month in which [she] file[s] [her] application" before deciding that the claimant is disabled).

Under the Act, an individual is disabled "only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [s]he lives, or whether a specific job vacancy exists for [her], or whether [s]he would be hired if [s]he applied for work." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).[8]  The disability must last or be expected to last for at least 12 months.  *Id.* §§ 423(d)(1)(A), 1382c(a)(3)(C)(i).  When a claimant has one or more physical or mental impairments, the Commissioner must consider the combined effects in making a disability determination.  *Id.* at §§ 423(d)(2)(B), 1382c(a)(3)(G).

Under the Act, there is a five-step evaluation process to determine whether a claimant is disabled:

1.  Whether the claimant has engaged in substantial gainful activity;

---

[8] The evaluation standards for DIB and SSI are identical.  *Compare, e.g.*, 20 C.F.R. § 404.1520 *with id.* at § 416.920.  Therefore, the Court will cite only to one set of regulations throughout the remainder of this Order.

2. Whether the claimant has a medically severe impairment or combination of impairments;

3. Whether the claimant has an impairment that meets or medically equals any listing found at Title 20, Chapter III, Part 404, Subpart P, Appendix 1;

4. Whether the claimant has the Residual Functional Capacity ("RFC") to perform her past relevant work; and

5. Whether the claimant can perform work that exists in the national economy, considering the claimant's RFC, age, education, and work experience.

*See* 20 C.F.R. § 404.1520(a)(4)(i)–(v); *see also Williams v. Bowen*, 844 F.2d 748, 750–52 (10th Cir. 1988) (describing five steps in detail). "The claimant bears the burden of proof through step four of the analysis[,]" and the Commissioner bears the burden of proof at step five. *Neilson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993). If an ALJ determines "at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal quotation marks omitted).

In reviewing the Commissioner's decision, the Court limits its review to considering whether the ALJ's findings are supported by substantial evidence and if they applied the correct legal standards. *See Flaherty*, 515 F.3d at 1069. The Court may not reweigh evidence nor substitute its judgement for the Commissioner's, but failure to apply proper legal standards may be sufficient grounds for reversal independent of substantial evidence analysis. *See Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014). Substantial evidence is more than a "mere scintilla" and is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion. *Flaherty*, 515 F.3d at 1069. Evidence is not substantial if it is overwhelmed by the record or is only a conclusion. *Williams*, 849 F.2d at 750. The Court may not replace the Commissioner's decision between two plausible and conflicting views, even if the Court would find differently in a *de novo* review. *Lax*, 489 F.3d at 1084. However, the Court must

"meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005).

## ANALYSIS

Plaintiff makes numerous arguments to challenge the ALJ's decision, which fall generally under three categories.  *See generally* [Doc. 14; Doc. 20].  First, Plaintiff argues that the ALJ erred in not employing the "treating physician" rule in assigning weight to the opinions of various medical sources when determining Plaintiff's RFC.  *See* [Doc. 14 at 25–34].  Second, Plaintiff contends that the ALJ erred in his evaluation of several of Plaintiff's physical conditions in the RFC and throughout Steps Four and Five of the sequential evaluation.  [*Id.* at 34–43].  Third, Plaintiff similarly argues that the ALJ failed to properly evaluate Plaintiff's mental disorders in the RFC and throughout Steps Four and Five of the sequential evaluation.  [*Id.* at 43–48].  The Commissioner, for her part, disagrees with Plaintiff, insisting that substantial evidence supports the ALJ's decision, and the ALJ properly considered all such evidence and explained his rationale.  *See generally* [Doc. 17].

As explained in greater detail below, the Court finds that reversal is appropriate based on Plaintiff's argument, within her second category of challenges (above), that the ALJ failed to cite any substantial evidence to support his conclusion that Plaintiff could sit for up to eight hours in an eight-hour workday.  *See* [Doc. 14 at 42; Doc. 20 at 12].  Thus, the Court will not substantively address the remainder of Plaintiff's arguments.

## I.   The RFC Assessment – Legal Framework

In formulating a claimant's RFC, the ALJ must consider the combined effect of all the claimant's medically determinable impairments, including the severe and non-severe.  *See Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013); *Ray v. Colvin*, 657 F. App'x 733, 734 (10th Cir.

2016).  A claimant's RFC is the most work the claimant can perform, not the least.  20 C.F.R. § 404.1545.  "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."  *Hendron*, 767 F.3d at 954 (citation and quotation marks omitted).  The ALJ need not identify "affirmative, medical evidence on the record as to each requirement of an exertional work level before an ALJ can determine RFC within that category," and the Court will uphold the RFC assessment if it is consistent with the record and supported by substantial evidence.  *See Howard v. Barnhart*, 379 F.3d 945, 947, 949 (10th Cir. 2004).

In assessing a claimant's RFC, the ALJ must address the record's medical source opinions. *See Vigil v. Colvin*, 805 F.3d 1199, 1201–02 (10th Cir. 2015).  For applications filed after March 27, 2017, the Regulations provide that an ALJ must evaluate the persuasiveness of a medical opinion using the following factors: (1) supportability; (2) consistency; (3) the provider's relationship with the claimant, including the length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, and extent of the treatment relationship, and whether the treatment relationship is an examining relationship; (4) the medical source's area of specialization; and (5) other factors "tending to support or contradict a medical opinion or prior administrative medical finding."  20 C.F.R. § 404.1520c(c); *Pearson v. Saul*, No. 20-cv-01808-NRN, 2021 WL 2549214, at *3 (D. Colo. June 22, 2021).

The Regulations provide that supportability and consistency "are the most important factors" in determining the persuasiveness of a medical opinion.  20 C.F.R. § 404.1520c(b)(2). While the ALJ must explain his approach to these two factors, he need not expound on the remaining three factors unless he finds that two or more non-identical medical opinions are equally

well-supported and consistent with the record. *Id.* at § 404.1520c(b)(2)–(3); *see also Vellone v. Saul*, 1:20-cv-00261 (RA) (KHP), 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021). "[A] supportability inquiry examines how well a medical source supported and explained their opinion." *S.P. v. Kijakazi*, No. 20-cv-00717-CMA, 2021 WL 6197283, at *5 (D. Colo. Dec. 30, 2021) (citing *Vellone*, 2021 WL 319354, at *6); *see* 20 C.F.R. § 404.1520c(c)(1). "Consistency, on the other hand, is 'an all-encompassing inquiry' that focuses on how well a medical source opinion is supported, or not supported, by the entire record." *S.P.*, 2021 WL 6197283, at *5 (citation omitted); *see also* 20 C.F.R. § 404.1520c(c)(2). At bottom, the ALJ must "consider all evidence in [the] case record when [making] a determination or decision whether [the claimant] is disabled." 20 C.F.R. § 404.1520(a)(3). This means that in addition to discussing supporting evidence, the ALJ must "discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Mestas v. Kijakazi*, No. 20-cv-01865-REB, 2021 WL 3030224, at *3 (D. Colo. July 19, 2021) (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996)).

## II.  Application

As mentioned above, the ALJ concluded that Plaintiff has the residual functional capacity to perform a reduced range of sedentary work, with the following relevant limitations:

> [T]he claimant can occasionally lift/carry 10 pounds and frequently lift/carry less than 10 pounds. She can stand and/or walk one hour and *sit for up to eight hours of an eight-hour workday*, and she requires a cane for ambulation. The claimant can never climb ladders, ropes, or scaffolds, and she can occasionally balance, stoop, kneel, crouch, crawl, or climb ramps and stairs.

[Doc. 8-2 at 18 (emphasis added)]. In reaching this RFC finding, the ALJ relied in part on Plaintiff's medical records and the prior administrative medical findings of State agency medical consultants, Erin Madden, M.D., and Virginia Thommen, M.D., the opinions of whom the ALJ found "persuasive." [*Id.* at 20–21]; *see also* [Doc. 8-3 at 80–82, 100–02, 128–31, 160–63]. Specifically, Dr. Madden opined that Plaintiff could occasionally lift/carry up to 20 pounds and

frequently lift/carry up to 10 pounds; stand/walk for two hours in an eight-hour workday; sit for six hours in an eight-hour workday; never climb ladders, ropes, or scaffolds; occasionally kneel, crouch, crawl, or climb ramps and stairs; frequently stoop; and must avoid concentrated exposure to temperature extremes and hazards.  [Doc. 8-3 at 80–82, 100–02].  Similarly, Dr. Thommen determined that Plaintiff could occasionally lift/carry up to 20 pounds and frequently lift/carry up to 10 pounds; stand/walk for four hours in an eight-hour workday; sit for six hours in an eight-hour workday; occasionally stoop, kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes, and scaffolds; and avoid concentrated exposure to extreme cold, wetness, or hazards, including unprotected heights.  [*Id.* at 128–30, 160–62].

The ALJ found Dr. Madden's opinions "persuasive," but determined that Plaintiff was further limited insofar as "she needs a cane for ambulation, can only occasionally balance due to the need for a cane and her impairments, would be more limited to lifting and carrying at the sedentary level because of her conditions and the need for a cane, and she would have more environmental limitations consistent with [Dr. Thommen's] findings at the reconsideration level." [Doc. 8-2 at 20].  The ALJ also found Dr. Thommen's opinions "persuasive," but determined that Plaintiff "is more limited with lifting/carrying, standing/walking, and needs a cane.  Further, in light of pain and instability, she is unable to climb ladders, ropes or scaffolds or do hazards." [*Id.* at 21].  The ALJ did not, however, express any disagreement with Drs. Madden's and Thommen's opinions that Plaintiff could sit for only six hours in an eight-hour workday.  *See generally* [*id.* at 12–26].  In any event, the ALJ ultimately concluded that Plaintiff's RFC "is supported by the State agency consultants' findings, the claimant's testimony at hearing, the claimant's activities of daily living, and the medical record and other evidence of record."  [*Id.* at 24].  Similarly, the ALJ found that "[t]he medical evidence and other evidence of record suggest that the claimant can sustain a

greater capacity of physical and mental work-related activity than she described at the hearing." [*Id.*].

On appeal, Plaintiff argues, albeit in cursory fashion, that the ALJ should have adopted Drs. Madden's and Thommen's specific opinions regarding Plaintiff's sitting limitations—i.e., six hours in a workday—given that the ALJ found their overall opinions persuasive. [Doc. 14 at 42; Doc. 20 at 12]. Plaintiff also points out that, at the administrative hearing, the VE testified that an individual similarly situated to Plaintiff who "would be limited to sitting for no more than six hours of an eight-hour workday" would be precluded from any full-time employment. [Doc. 8-2 at 59–60 ("So, if that's the case, Judge, that would eliminate all full-time competitive work.")]. In response, rather than respond directly to Plaintiff's argument on this issue, the Commissioner dismisses it (and several others) outright as "minimally developed" and "nothing more than [improper] invitations to reweigh the evidence in [Plaintiff's] favor and requests to the Court to second-guess the ALJ's factfinding." [Doc. 17 at 20–21]. The Court respectfully disagrees with the Commissioner, and finds reversible error insofar as the ALJ failed to identify substantial evidence to support his determination that Plaintiff can sit for up to eight hours in an eight-hour workday.

First, although the ALJ found the determinations of Drs. Madden and Thommen to be persuasive overall, the ALJ did not explain why he ignored (or rejected) Drs. Madden's and Thommen's specific opinions that Plaintiff could sit for only six hours in a workday, despite explicitly rejecting other limitations they assessed. *See* [Doc. 8-2 at 20–21 (finding that Plaintiff had greater lifting and carrying limitations than Drs. Madden and Thommen determined, among others)].

Second, there is only one examiner who determined that Plaintiff has no sitting limitations *and* whose opinion the ALJ found persuasive—David Harmon, M.D., with whom Plaintiff underwent an independent medical examination in May 2021. *Compare* [Doc. 8-7 at 883] *with* [Doc. 8-2 at 21]. In addition to recommending no limitations regarding the number of hours that Plaintiff could sit in a normal workday, Dr. Harmon determined, *inter alia*, that Plaintiff could stand for six hours and walk for four hours. [Doc. 8-7 at 883–84]. The ALJ found Dr. Harmon's opinion "generally persuasive" but determined that Plaintiff "is more limited with standing and walking" than Dr. Harmon assessed. [Doc. 8-2 at 21].[9] Confusingly, however, the ALJ also rejected the opinion of Ronald Jendry, M.D., with whom Plaintiff underwent an independent medical examination in July 2016, and who, like Dr. Harmon, recommended "[no] limitations regarding the number of hours that [Plaintiff] should be able to sit during a normal 8-hour workday." [Doc. 8-7 at 503, 508]. Despite the consistency between the sitting limitations in Dr. Jendry's opinion, Dr. Harmon's opinion, and the ALJ's RFC assessment, the ALJ found all of Dr. Jendry's opinions "unpersuasive" on the basis that he "is a one-time examiner relying on a one-time presentation with limitations not supported by the overall record." [Doc. 8-2 at 21].

Third, the ALJ also rejected opinions of other examiners who determined that Plaintiff could not sit for a full workday. For instance, the ALJ found unpersuasive the opinion of Margaret MacDonald, M.D., with whom Plaintiff underwent a consultative examination in August 2020. *See* [*id.*; Doc. 8-7 at 655–60]. Dr. MacDonald determined, *inter alia*, that Plaintiff "will have difficulty sitting for longer than an hour at a time and likely not more than a total of four hours in an 8-hour workday, due to pain, spasms, fatigue and back and knee pain." [Doc. 8-7 at 659]. In

---

[9] Although the Court presumes that the ALJ relied upon Dr. Harmon's opinion providing no sitting limitations, the Hearing Decision nevertheless remains unclear.

rejecting the entirety of Dr. MacDonald's opinion as unpersuasive, the ALJ reasoned that Dr. MacDonald "rel[ied] upon a diagnosis of fibromyalgia that she cannot establish and has not been properly established as a medically determinable impairment." [Doc. 8-2 at 21]. The ALJ also pointed out that Dr. MacDonald "is a one-time examiner with no treatment relationship and the findings are inconsistent with the longitudinal record." [*Id.*].

The ALJ similarly rejected the opinions of William Wilcox, M.D., who completed a fibromyalgia questionnaire and RFC assessment in July 2021. *See* [Doc. 8-7 at 888–93]. Dr. Wilcox indicated that Plaintiff could sit for "about 2 hours" in a workday in the questionnaire, [*id.* at 890], but for under two hours in a workday in the RFC assessment, [*id.* at 893]. In rejecting the entirety of Dr. Wilcox's opinions, the ALJ reasoned, *inter alia*, that "fibromyalgia is not a medically determinable impairment under [the SSA's] criteria . . . and relying upon that diagnosis weakens support for Dr. Wilcox's opinions." [Doc. 8-2 at 21]. The ALJ also explained that Dr. Wilcox had a "minimal treatment history" with Plaintiff, and cited the apparently "conflict[ing]" opinions regarding Plaintiff's sitting limitations—i.e., "about 2 hours" vs. under two hours—as justification for rejecting Dr. Wilcox's opinions altogether. [*Id.*].

In addition, in December 2017 progress notes from Plaintiff's treating provider, Trisha Finnegan, NP, Ms. Finnegan recommended that Plaintiff avoid any heaving lifting, pushing, or pulling, and that she "undergo frequent position changes." [Doc. 8-7 at 608]. Although the ALJ found Ms. Finnegan's opinions "generally persuasive," he determined that "the need for frequent position changes is *not supported by limited evidence supporting any significant difficulties sitting*." [Doc. 8-2 at 22 (emphasis added)]. Even so, the ALJ acknowledged, immediately thereafter and without any further explanation or dispute, that Plaintiff "regularly reports being able to sit at least one hour at a time." [*Id.*]. What is more, although the ALJ's rationale suggests

16

that none of the above-referenced sitting limitations are supported by evidence, it is unclear from what records the ALJ reached this conclusion. *See* [*id.* at 21 (finding Dr. MacDonald's conclusions to be "inconsistent with the longitudinal record"; finding "conflict" between Dr. Wilcox's determinations that Plaintiff "can sit for about two hours" and "can sit for less than two hours"; and disregarding Ms. Finnegan's determination that Plaintiff would require frequent position changes on the grounds that such need "is not supported by limited evidence supporting any significant difficulties sitting")].

In sum, the Court finds an absence of substantial evidence showing that the ALJ was justified in his conclusion that Plaintiff could sit for eight hours in an eight-hour workday, as opposed to, for instance, six hours, as determined by Drs. Madden and Thommen—the opinions of whom, again, the ALJ found persuasive. And in light of the VE's testimony that an individual similarly situated to Plaintiff who "would be limited to sitting for no more than six hours of an eight-hour workday" would be precluded from any full-time employment, [Doc. 8-2 at 59–60], the Court finds this error reversible. *See Borden v. Saul*, No. 18-cv-02873-PAB, 2020 WL 2832379, at *2 (D. Colo. June 1, 2020) ("The district court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision." (citing *Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990)); *see also Flaherty*, 515 F.3d at 1070 ("Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."); *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992) ("Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion.").

Accordingly, this matter must be remanded to allow the Commissioner to consider and address whether Plaintiff can indeed sit for up to eight hours in an eight-hour workday, including discussing the relevant factors supporting his determination, *see* 20 C.F.R. § 404.1520c(b)(2), or how the ALJ's determination, including the RFC, may change if Plaintiff can only sit for up to six hours in an eight-hour work day.

## CONCLUSION

For the reasons stated herein, **IT IS ORDERED** that:

1.     The Commissioner's final decision is **REVERSED** and **REMANDED** for further administrative proceedings consistent with this Order.

DATED:  August 4, 2023                                          BY THE COURT:

Nina Y. Wang
United States District Judge